468 S.E.2d 173

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Charles OMECHINSKI, Defendant Below, Appellant.**

No. 23032.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 6, 1996.

Decided Feb. 14, 1996.

Scott E. Johnson, Assistant Attorney General, Charleston, for Appellee.

Douglas H. Arbuckle, Lewisburg, for Appellant.

CLECKLEY, Justice:

The defendant below and appellant herein, Charles Omechinski, appeals from his conviction of six counts of cruelty to animals. The defendant contends the trial court committed reversible error when it allowed a defense witness to testify as a rebuttal witness for the prosecution after the witness discussed her testimony with another witness and the prosecutor in violation of a sequestration or-

der. We find no reversible error and, therefore, we affirm the defendant's conviction.

## I.

### FACTUAL AND PROCEDURAL HISTORY

The defendant was indicted for six counts of cruelty to animals stemming from an April 29, 1994, inspection of six of the defendant's horses by members of the Humane Society and an employee of the West Virginia Department of Natural Resources Enforcement Division. At trial, witnesses testified the horses were found on two and one-half acres of land with no food or water and insufficient pasture to feed. The State presented evidence that the horses were so seriously underweight that some of the horses had pronounced rib and hip bones, their hooves were split from lack of care, various trees showed evidence of having been debarked (presumably for food) by the horses, and some horses suffered from sores and uneven shedding of their coats possibly from parasites or malnutrition.

One of the witnesses, Louise Kellison, testified on behalf of the defense. After being excused, Ms. Kellison left the courtroom and went into the witness room where Barry Kaizer, a witness for the prosecution, was waiting. Mr. Kaizer had not been excused because the prosecutor thought he might need Mr. Kaizer to testify as a rebuttal witness. Ms. Kellison told Mr. Kaizer that the prosecutor did not ask her the right questions. When Mr. Kaizer asked Ms. Kellison what the prosecutor should have asked, she responded the prosecutor should have asked her how much food the defendant fed the animals. Mr. Kaizer asked Ms. Kellison if she would be willing to talk to the prosecutor and she agreed. The prosecutor decided to call Ms. Kellison to testify as a rebuttal witness. The defendant objected to Ms. Kellison testifying and argued she should not be permitted to testify because any new information she would testify about was discovered because a sequestration order was violated. The trial court denied the defendant's motion and permitted Ms. Kellison to testify as a rebuttal witness. According to the de-

fendant, Ms. Kellison proceeded to completely contradict her earlier testimony.

The defendant was found guilty of all six counts of cruelty to animals and subsequently was sentenced to six months in jail for each of the six counts,[1] fined $100 for each count for a total of $600, and restricted from having control of horses for three years.[2] The defendant appeals his conviction and argues the trial court erred when it permitted Ms. Kellison to testify after a sequestration order was violated. He also asserts that Ms. Kellison did not give appropriate rebuttal testimony.[3]

## II.

## DISCUSSION

The sole issue on appeal is whether the trial court committed reversible error by allowing Ms. Kellison, a previously called defense witness, to testify as a rebuttal witness for the prosecution in violation of a sequestration order issued pursuant to Rule 615 of the West Virginia Rules of Evidence. The State argues that, because there was no violation of any sequestration order, the trial court did not abuse its discretion under Rule 611(a) of the West Virginia Rules of Evidence in permitting the witness to testify in rebuttal.[4] For different reasons, we agree with the State and find no reversible error in this case. Thus, the conviction is affirmed.

### A.

### *Standard of Review*

■ In making a Rule 615 ruling, a trial court must exercise its sound discretion. Thus, this Court accords substantial defer-

ence to rulings and factual determinations of a trial court regarding the qualifications, competency, and extent of a witness's testimony. *McDougal v. McCammon,* 193 W.Va. 229, 235, 455 S.E.2d 788, 794 (1995); *Michael v. Sabado,* 192 W.Va. 585, 595, 453 S.E.2d 419, 429 (1994). We review these determinations either under a clearly erroneous or an abuse of discretion standard. *Grillis v. Monongahela Power Co.,* 176 W.Va. 662, 666–67, 346 S.E.2d 812, 817 (1986). On the other hand, where a trial court's determination involves a construction of the West Virginia Rules of Evidence and rulings of law, our review is plenary. *See Gentry v. Mangum,* 195 W.Va. 512, 466 S.E.2d 171 (No. 22845 12/8/95).

### B.

### *Analysis*

■ The exclusion of witnesses from the courtroom during trial is a time-honored practice designed to prevent "influenced" testimony. *See Frideres v. Schiltz,* 150 F.R.D. 153, 158 (S.D.Iowa C.D.1993) ("[s]equestering witnesses to assist in ascertaining truth is at least as old as the Bible"). Indeed, the United States Supreme Court observed that this practice goes back to " 'our inheritance of the common Germanic law.' " *Geders v. United States,* 425 U.S. 80, 87, 96 S.Ct. 1330, 1335, 47 L.Ed.2d 592, 598 (1976), *quoting* 6 J. Wigmore, *Evidence* § 1837 at 348 (3rd ed.1940). The importance of the rule was emphasized anew by its reaffirmation and codification into the West Virginia Rules of Evidence. Rule 615 of the Rules of Evidence provides, in pertinent part: "At the request of a party the court *shall* order witnesses

1. The trial court ordered that the sentences for Counts 1 through 3 run concurrently with each other and the sentences for Counts 4 through 6 run concurrently with each other, with Counts 4 through 6 running consecutively to Counts 1 through 3.

2. The trial court then suspended all but sixty days of the sentences and placed the defendant on three years probation.

3. In addition, the defendant argues: (1) the "State's purpose in calling Louise Kellison was not to offer rebuttal testimony, but instead to impeach her credibility as a witness," and (2) the trial court improperly based its sentence in an-

other criminal matter on the sentence in this case. We find these arguments have no merit, and they will not be discussed in this opinion.

4. Rule 611(a) of the Rules of Evidence provides:

   "*Control by court.*—The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment."

excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion." (Emphasis added). The rule makes the exclusion of witnesses a matter of right and the decision is no longer committed to the trial court's discretion, as it once was. *State v. Steele*, 178 W.Va. 330, 359 S.E.2d 558 (1987); Fed. R.Evid. 615 advisory committee note.[5] The purpose of the sequestration rule is to prevent the shaping of testimony by one witness to match that of another and to discourage fabrication and collusion. The rule applies to rebuttal witnesses as well, and it is not significant whether the rebuttal witness has testified earlier in the case-in-chief.[6]

The defendant contends that a meeting attended by two primary witnesses and later joined by the prosecutor took place in violation of Rule 615. Although it is difficult to determine from the record just what was discussed at the meeting(s), it seems clear there was at least general discussion as to the inadequacy of Ms. Kellison's testimony while on the stand.[7]

The defendant is correct when he suggests the proper way to examine the meeting(s) is to determine whether an order of sequestration was violated. There can be no question that the prosecutor and defense counsel both have the right to interview witnesses prior to trial and to review with them their testimony. The alleged impropriety here occurred not because of the meeting between the prosecutor and this witness but because it resulted from one witness discussing another wit-

5. The trial court in ruling on the issue presented in this appeal suggested that sequestration is a discretionary call for the trial court. Obviously, this reading of Rule 615 is incorrect. In addition to *Steele*, the federal advisory note to Rule 615 treats the matter of sequestration as "one of right" as opposed to one "committed to [a trial judge's] discretion." This interpretation is consistent with the rule's use of the word "shall" to require sequestration of witnesses upon a party's request.

6. We reject any notion that this rule should not be applied to rebuttal witnesses when those witnesses already have given testimony in the case-in-chief. The argument that exclusion is not required because the jury will have the opportunity to weigh the credibility of the rebuttal testimony in light of testimony previously given by the witness has force, but we believe on balance it is unsound. The purpose of the rule is to prevent witnesses from "tailoring" their testimony to that of earlier witnesses and to aid in detecting testimony that is less than candid. *Geders v. United States*, 425 U.S. at 87, 96 S.Ct. at 1335, 47 L.Ed.2d at 598–99. These concerns are just as valid for a rebuttal witness who already has testified in the case-in-chief as they are for a primary witness. A witness may wish to tailor rebuttal testimony to conform to that of other witnesses as well as to cover up inconsistencies in earlier testimony that have been revealed by other witnesses. *See* 6 J. Wigmore, *Evidence* § 1840 at 470 (Chadbourn rev.1976) (the time for sequestration "continues for each witness after he [or she] has left the stand, ... because it is frequently necessary to recall a witness in consequence of a later witness' testimony." (Footnote omitted)).

7. Mr. Kaizer testified that the following discussion took place between him and Ms. Kellison after she testified on behalf of the defense:

"[DEFENSE COUNSEL] ... And after you testified, you were subject to recall by the State as a witness?

"A Yes, sir.

"Q And you had been sequestered by this Court as a witness prior to your testimony?

"A Yes, sir.

"Q And after your testimony, you returned to sequester as you were still a witness subject to call?

"A That's correct.

\*    \*    \*    \*    \*    \*

"Q —do you recall Louise Kellison being called to the court as a witness?

"A Yes, sir.

\*    \*    \*    \*    \*    \*

"Q Okay.... [Ms. Kellison] testified. Did you have any conversations with her after that?

"A She had a conversation with me when she returned.

"Q Where was this at?

"A In the witness room.

"Q What was the nature of this conversation?

"A She advised me that the prosecutor did not ask her the proper questions in the courtroom.

"Q And did you ask her as to what questions he should have asked?

"A Yes, sir, I did.

"Q And what was her response to that?

"A She said—she made statements regarding the amount of food that the defendant had fed his horses. I asked her if she would be willing to talk to the Prosecuting Attorney about this, and she agreed. So the next break in the court procedure, I contacted Mr. Lorensen, the Prosecuting Attorney, and advised him that the—one of the defendant's witnesses would like to talk to him regarding him not asking the proper questions in court."

ness's testimony and reporting back to the prosecutor the need to recall the witness in rebuttal. It is clear that had this discussion never taken place there would have been no rebuttal testimony from Ms. Kellison.

Up to this point, there is little disagreement between the parties. The State argues, and the trial court ruled, that the trial court had not imposed nor adopted a rule sequestering witnesses after they testified. On appeal, the defendant argues that Rule 615 requires not only that prospective witnesses be excluded from the courtroom, but also that they be prohibited from discussing the case with other witnesses. We agree.[8]

■ We believe the trial court was in error in its view that the rule does not include this protection. Professor McCormick states the fact that Rule 615

"is entitled 'Exclusion of witnesses' should not be read as merely authorizing the judge physically to exclude them from the courtroom. In fact it is said that in addition to instructing the witnesses to leave the courtroom, the judge should instruct

them not to discuss the case ... [with other witnesses]. This is so because the rule not only provides for the 'exclusion' of witnesses, it provides for exclusion 'so that they cannot hear the testimony of other witnesses....' Moreover, the term 'hear' should not be read literally but as including other means of acquiring the information, such as reading a letter or transcript of testimony." Edward W. Cleary, *McCormick on Evidence* § 48.1 at 9 (3rd ed.1987 Supp.).

We specifically hold that a circumvention of Rule 615 occurs where witnesses indirectly defeat its purpose by discussing with other witnesses who are subject to recall testimony they have given and events occurring in the courtroom. This problem can be avoided by instructions from the trial court to counsel and witnesses when the rule's invocation is announced making it clear that witnesses not only are excluded from the courtroom but also are not to relate to other witnesses what their testimony has been and what has occurred in the courtroom.[9] As the court in

---

**8.** The trial court made the following ruling in relation to witness sequestration:

"With respect to sequestration, whenever that is done in a trial, first, it's always discretionary with the Court. It is not automatic. There is no right of sequestration unless the Court orders the witnesses to be sequestered. Now, we do that so that—or I do it so that the witnesses cannot sit in the courtroom and hear the actual evidence and testimony and then come up and tell counsel for either side how to conduct further questions or what they might say by way of—contradictory to that evidence, or what they might say in support of that evidence that they would not have otherwise said if they did not hear the witnesses' actual testimony.

"We do not instruct the witnesses to go and not discuss the case. And I don't know of any rule that says when they are sequestered—they are outside the courtroom—that they have the obligation to not discuss the case unless the Court orders that done. The Court did not do that in this instance. And it just wasn't done. The danger is in the courtroom, hearing under oath the evidence and testimony, and then that either changing a witness' evidence or testimony, or giving them the ammunition to attack it, which they wouldn't otherwise do, to make up a story or a response either for or against what the witness says. And it's for that reason that we try to get to the truth in the courtroom with both parties present, and with both represent-

ed by counsel before the jury, so that the evidence can't either be altered or prepared or enhanced upon during the course of the trial when one is permitted to hear what the other actually says.

"Now, in this instance, it was a statement made. 'Well, he asked me the wrong question.' And he said, 'What was that?' 'Well, he should have asked me ...'—what have you. And there is no indication that he started the conversation, he elicited the conversation, or that he prepared the witness in what she said.

"He passed that information on to the Prosecuting Attorney. He recalled her. Now, it isn't—it doesn't go—it doesn't meet the requirements with respect to after acquired evidence to result in a new trial. But we weren't in a new trial. We were still in the course of the presentation of evidence and testimony. And he asked for permission to, and the Court granted it, to recall the witness by way of rebuttal because it was his witness—your witness, defense witness—and not his. And while he had finished the cross-examination, he had not rested. He had not completed his portion of the case. By recalling her, he made her his witness."

As a result of a few errors in the trial court's analysis of sequestration, we now discuss the sequestration requirements under Rule 615.

**9.** The Fourth Circuit suggests the wisdom for such a practice in *Milanovich v. United States,*

*United States v. Buchanan*, 787 F.2d 477, 485 (10th Cir.1986), states:

> "A failure to instruct the witnesses fully after the Rule is invoked may cause reversal. The witnesses should be clearly directed, when the Rule is invoked, that they must all leave the courtroom (with the exceptions the Rule permits), and that they are not to discuss the case or what their testimony has been or would be or what occurs in the courtroom with anyone other than counsel for either side.... Counsel know, and are responsible to the court, not to cause any indirect violation of the Rule by themselves discussing what has occurred in the courtroom with the witnesses." (Citation omitted).

Of course, here the witness did not violate directly the trial court's order because the trial court failed to give the proper instruction.

█ Still, the defendant has a difficult hurdle to clear to demonstrate his entitlement to a new trial. First, the rights granted under Rule 615 are not self-executing. *See* Christopher B. Mueller & Laird C. Kirkpatrick, *Evidence* § 6.15 at 539 (1995) ("[e]xclusion on request is a matter of right, but ... [W.Va. R.Evid.] 615 is not self-executing and a party must ask for exclusion in order to claim any protection"). Although we cannot find the order of sequestration in the record, we assume its existence from discussions in the trial court. What is critical to this appeal, however, is the absence of a request for an appropriate instruction from the defendant. We can find no decisions where an appellate court has reversed because the trial court failed *sua sponte* to instruct witnesses not to discuss the case amongst themselves.

█ We stress that it is of crucial importance to us that the defendant failed to request the very instruction that is the subject of his complaint. This Court already has indicated that where there is no timely request or objection, the plain error doctrine governs in deciding whether the failure to instruct calls for reversal. We do not believe this error rises to the level of plain error under the standard we enunciated in *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995) ("plain error" standard of review requires error that is clear or obvious and that affects substantial rights which in most cases means that the error is of such great magnitude that it probably changed the outcome of trial). Rule 105 of the West Virginia Rules of Evidence is instructive as to a trial court's obligation to *sua sponte* instruct.[10] It mandates that curative, limiting, and cautionary instructions must be given upon *demand* of one of the parties. We believe the same rule applies here. Accordingly, we hold that in the absence of a specific request by the complaining party, a defendant may not claim error as a result of the failure of a trial court to instruct witnesses as to the impact of a sequestration order.

█ Second, we find it difficult to grasp the defendant's argument that Rule 615 is directly applicable to the present situation. Rule 615 is designed to preclude a witness from being "influenced" by another witness's actual or proposed testimony. *See United States v. Harris*, 39 F.3d 1262, 1269 (4th Cir.1994). The situation here is different from when a witness is alleged directly to have violated a sequestration order by staying in the courtroom or discussing testimony with another witness that "influenced" [his or

---

275 F.2d 716, 720 (4th Cir.1960), *aff'd, in part, rev'd, in part, on other grounds,* 365 U.S. 551, 81 S.Ct. 728, 5 L.Ed.2d 773 (1961): "If witnesses are excluded but not cautioned against communicating during the trial, the benefit of the exclusion may be largely destroyed." More pointedly, Judge S. Skelley Wright stated:

> "One of the purposes in segregating witnesses during a trial is to insure, as far as possible, that each gives his [or her] individual recollections of the events in suit, unaffected by the testimony of other witnesses. It is for this reason, too, that witnesses, before being segregated, are advised not to discuss the case with

anyone other than counsel for either side. Failure to comply with this procedure resulted in the unusual recalling of witnesses by both sides near the close of the trial." *Gregory v. United States*, 369 F.2d 185, 192, 125 U.S.App. D.C. 140, 147 (1966).

**10.** Rule 105 of the Rules of Evidence provides: "When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly."

her] testimony in defiance of the order. No one revealed testimony to Ms. Kellison, and she is the only witness whose testimony is challenged. To the contrary, it was Ms. Kellison who spoke of her own testimony and the need for the prosecutor to have asked additional questions. We do not believe it was error for the prosecutor to discuss future testimony with a witness who could be recalled. A witness after being released is not prohibited from discussing his or her potential for additional testimony with counsel. *McCormick on Evidence* § 48.1 at 9; *Buchanan*, 787 F.2d at 485 (the judge should instruct witnesses not to discuss their testimony "with anyone other than counsel for either side").

Even if we were of the opinion that the error was preserved, it is doubtful whether there is reversible error.[11] This Court has yet to adopt a standard of review for a trial court's noncompliance with Rule 615.[12] A number of jurisdictions have held a trial court's erroneous denial of an exclusion request does not mandate reversal absent a showing of prejudice. *See, e.g., Wood v. Southwestern Bell Tel. Co.*, 637 F.2d 1188, 1194 (8th Cir.), *cert. denied*, 454 U.S. 837, 102 S.Ct. 142, 70 L.Ed.2d 118 (1981). Others courts have suggested, without reaching the question, that noncompliance with the rule may mandate automatic reversal. *See United States v. Burgess*, 691 F.2d 1146, 1157 (4th Cir.1982); *State v. DiModica*, 40 N.J. 404, 412–14, 192 A.2d 825, 830 (1963). Finally, several states have adopted an approach which presumes that a violation of the rule prejudices the defendant and requires reversal unless the contrary is manifestly clear from the record or unless the prosecution proves no prejudice. *See State v. Roberts*, 126 Ariz. 92, 94, 612 P.2d 1055, 1057 (1980) (*en banc* ); *Reynolds v. State*, 254 Ark. 1007, 1009, 497 S.W.2d 275, 277 (1973); *Montos v. State*, 212 Ga. 764, 766, 95 S.E.2d 792, 794 (1956); *Givens v. State*, 99 Nev. 50, 54–55, 657 P.2d 97, 100 (1983).

The last approach appears preferable. We believe that witness sequestration presents the kind of situation that makes it unfair to place the burden of proving prejudice on a defendant. It might very well be impossible to tell how a witness's testimony would have differed had there been compliance with Rule 615. In *United States v. Farnham*, 791 F.2d 331, 335 (4th Cir.1986), the Fourth Circuit stated:

> "We reject the government's suggestion that the technical violation of Rule 615 lacks consequence because the defendant cannot prove prejudice. Instead, we understand the mandatory, unambiguous language of the rule to reflect the drafters' recognition that any defendant in Farnham's position would find it almost impossible to sustain the burden of proving the negative inference that the ... testimony would have been different had he been

---

11. Most errors, including constitutional ones are subject to harmless error analysis, *Sullivan v. Louisiana*, 508 U.S. 275, 278, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182, 189 (1993), simply because it makes no sense to retry a case if the result assuredly will be the same. Of course, some errors are deemed fatal without proof of prejudice.

12. Although involving a different issue, this case might be controlled by our decisions that consider the appropriate remedy when a witness violates a sequestration order issued pursuant to Rule 615. These cases commit to the discretion of a trial court the appropriate sanction for a witness's violation of an exclusionary order. *See State v. Ward*, 188 W.Va. 380, 424 S.E.2d 725 (1991); *State v. Steele, supra; State v. Wilson*, 157 W.Va. 1036, 207 S.E.2d 174 (1974). In *Holder v. United States*, 150 U.S. 91, 92, 14 S.Ct. 10, 11, 37 L.Ed. 1010 (1893), the United States Supreme Court stated:

"If a witness disobeys the order of withdrawal, while he may be proceeded against for contempt and his testimony is open to comment to the jury by reason of his conduct, he is not thereby disqualified, and the weight of authority is that he cannot be excluded on that ground merely, although the right to exclude under particular circumstances may be supported as within the sound discretion of the trial court."

The purpose of the order is to gain assurance of credibility, and its violation is a legitimate subject of comment in this respect. Thus, it seems proper that unless the violation has so discredited the witness as to render his or her testimony incredible as a matter of law, the witness should not be disqualified from testifying. In the above cases, the lower courts fully complied with Rule 615; the witnesses individually violated the court orders issued pursuant to the rule. In the case at bar, however, the issue is framed in terms of the *trial court's* failure to comply with Rule 615 when it failed to instruct the sequestered witnesses.

sequestered. A strict prejudice requirement of this sort would not only be unduly harsh but also self-defeating, in that it would swallow a rule carefully designed to aid the truth-seeking process and preserve the durability and acceptability of verdicts."

Therefore, in criminal cases, when a trial court fails to comply with Rule 615, prejudice is presumed and reversal is required unless the prosecution proves by a preponderance of the evidence that the error was harmless.

■■■■ On the record before us, we are able to conclude that even had there been error, it was harmless. In making a ruling whether to exclude a rebuttal witness's testimony under Rule 615, or for that matter under Rule 611(a), a trial court should consider several factors including: (1) how critical the testimony in question is—that is, whether it involved controverted and material facts; (2) whether the information ordinarily is subject to tailoring such that cross-examination or other evidence could bring to light any deficiencies; (3) to what extent the testimony of a witness is likely to encompass the same issues as other witnesses; (4) in what order the witness will testify; and (5) if any potential for bias exists which may motivate the witness to tailor his or her testimony.

Again, the sequestration rule is to ensure the credibility of witnesses. Ms. Kellison already had testified somewhat favorably for the defendant, and the jury had in front of them the exact words spoken in the case-in-chief. The full circumstances of the alleged sequestration violation were made known to the defense prior to Ms. Kellison's recall to the stand. These circumstances were a proper subject for impeachment on cross-examination and for comment during closing argument. Notably, the most damaging testimony to the defendant's case came from other prosecution witnesses. What Ms. Kellison said on rebuttal was mild compared to the testimony of many of the witness including the testimony of the defendant's own medical expert Dr. Steve Swank.[13] The violation here is not so extreme as to render the witness's testimony incredible as a matter of law nor is it so extreme as to deny the defendant fundamental fairness. Even if we were of the opinion that there was a Rule 615 violation, the error would be harmless because we are convinced that the defendant would still have been convicted in view of the overwhelming evidence of the his guilt. Thus, we find that any error involving sequestration was harmless as a matter of law.

### III.

### CONCLUSION

For the foregoing reasons, the judgment of the Circuit Court of Pocahontas County is affirmed.

Affirmed.

---

13. Various State witnesses consistently testified the horses were extremely thin with some evidence of sores and other signs of neglect. The witnesses that visited the defendant's home on April 29, 1994, to review the horses' condition also testified that no food or water was present. This testimony seems consistent with the State's argument that the horses were underfed and with Ms. Kellison's disputed testimony.

Additionally, certain portions of the testimony of the defendant's medical expert, Dr. Swank, were damaging. Although Dr. Swank indicated the horses' weight loss could have been the result of a harsh winter, he also testified the horses were on the "low average of what horses should look like for that time of year." Dr. Swank further stated that, judging from pictures, the pasture would have been insufficient to feed the horses if nothing else was provided and that the horses' skin problems could have been the result of parasites.