# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs) No. 19-0619** (Jefferson County 19-F-4)

**Karl Justin Dunn, III,**
**Defendant Below, Petitioner**

**FILED**

**July 30, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Karl Justin Dunn, III, by counsel Crystal L. Walden and Robert F. Evans, appeals his conviction by a jury of one count of possession with intent to deliver heroin on the ground that incriminating text messages found on his cellphone were erroneously admitted at trial. The State of West Virginia, by counsel Laura K. Bissett, filed a response in support of the conviction. Petitioner submitted a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

In May of 2018, Deputy G.W. Kilmer of the Jefferson County Sheriff's Department began surveilling petitioner's residence in Kearneysville, West Virginia, based upon anonymous tips regarding potential drug activity there.[1] On the first day he surveilled the residence, Deputy Kilmer observed petitioner several times leave his residence for a short time and then return, which, he testified, in his experience and training as a drug interdiction officer, "is indicative of somebody who's obviously going out to meet somebody and come straight back. . . . The dealers that we deal with in this day and age, they do not keep large amounts of narcotics or whatever they tend to sell on them." According to Deputy Kilmer, "if they get pulled over with [the drugs] on them, then obviously that's going to look worse than if they get pulled over with a small amount. And they keep it at their residence . . . ." Also on that day, Deputy Kilmer conducted a traffic stop on

---

[1] Deputy Kilmer had received information that individuals staying at the residence drove a gray or silver BMW automobile and that they were dealing heroin and "MDMA or ecstasy."

1

petitioner, who was driving a gray BMW automobile, and "learned that he was not a valid driver."[2] Because Deputy Kilmer "did not have any other reason to believe that anything else was going on . . . [petitioner] was released with a valid driver . . . ."

On May 17, 2018, Deputy Kilmer returned to petitioner's residence for further surveillance. He observed petitioner leave the residence and get into the gray BMW. Deputy Kilmer testified that petitioner remained in his car and on his cellphone for one hour to one hour and forty-five minutes. When petitioner finally drove away from the residence, Deputy Kilmer followed him and eventually observed petitioner's vehicle "[c]ross[] over" the centerlines and fog lines, which "is an indicator that there might be impairment." Deputy Kilmer conducted a traffic stop of the vehicle.

Deputy Kilmer asked petitioner to step out of the vehicle and, when he did, Deputy Kilmer observed that petitioner had restricted pupils and that his eyes were red and glassy. When asked whether he had been drinking or doing any narcotics or drugs, petitioner replied that he had consumed alcoholic beverages and smoked marijuana approximately two hours earlier. Deputy Kilmer then asked if there was anything illegal in the vehicle, and petitioner replied that there was not. It is undisputed that Deputy Kilmer asked for and received petitioner's consent to search the vehicle. Another officer who had arrived at the scene located a single MDMA pill during the search. It was wrapped in a twist-off bag.[3] Deputy Kilmer then asked petitioner "if he had anything illegal on his person." Petitioner admitted to Deputy Kilmer that he had heroin concealed in his rectum. Petitioner agreed to submit to a preliminary breath test, which he passed. He was arrested and transported to the sheriff's department where he produced the heroin from his person. The heroin was contained in three plastic twist-off bags. One bag weighed .5 grams while two bags weighed 1 gram each. Deputy Kilmer testified that the weight and manner in which the drugs were packaged were consistent with dealing, rather than simply using, them.[4]

Also at the sheriff's department, petitioner agreed to submit to a field sobriety test and a secondary breath test. Petitioner refused to consent to a blood draw and an interview.

Deputy Kilmer also testified that, while petitioner was being processed, "his phone was constantly receiving text messages, phone calls, and, . . . I've arrested a lot of people and the only

---

[2] Deputy Kilmer did not state the reason he conducted the traffic stop.

[3] According to Deputy Kilmer, a "[t]wist[-]off bag is something that dealers will use. They will cut off ends of plastic bags. . . . They[] just cut pieces off. Lay them in squares. Put their product in it, whatever it weights out to be, and then fold them up, twist them and tie them."

[4] Deputy Kilmer explained that heroin users

> don't keep [the heroin] in separate bags. They typically buy it in one bag and that's the way it stays until they're through with it. Also the weight indicated to me that it was more than personal use, because again most heroin addicts or users that I've dealt with use around an eighth of a gram at a time. Anything more than that would indicate to me that it was possibly a dealer not a user.

people whose cellphones constantly ring like that that I have dealt with are drug dealers." It is undisputed that Deputy Kilmer "asked [petitioner] if there were any messages in his phone that might indicate that he was actually selling narcotics and for consent to look[,]" and that petitioner responded, "'[T]here shouldn't be[,]" and gave his consent. Upon reviewing the text messages on petitioner's cellphone, Deputy Kilmer "observed several that indicated to me that he was in fact selling narcotics."

Deputy Kilmer subsequently filed in the Magistrate Court of Jefferson County an application for a search warrant for petitioner's two cell phones. The application was granted and the cell phones analyzed by David Boober, an investigator with the Jefferson County Sheriff's Department who conducts digital forensic analysis of computers and devices. Mr. Boober opined that the text messages he analyzed indicated that petitioner was involved in drug trafficking.

Thereafter, petitioner was indicted on one count of possession with intent to deliver (heroin), in violation of West Virginia Code § 60A-4-401(a)(i), and one count of driving while in an impaired state, in violation of West Virginia Code § 17C-5-2(e).

Prior to trial, petitioner filed a Motion to Suppress Cell Phone Evidence on the ground that petitioner had not been given *Miranda* warnings[5] after he was arrested and, thus, any subsequent consent to search his cellphone was involuntary, rendering any resulting evidence (i.e., the text messages) inadmissible at trial as "fruit of a poisonous tree." A hearing was conducted on March 25, 2019, and in an order entered on March 28, 2019, the circuit court denied the motion. The court determined that, based upon the totality of the circumstances, the petitioner's consent to search the cellphone was voluntary and, "even if [his] consent . . . was rendered involuntary by virtue of his custodial status and lack of Miranda or Fourth Amendment rights warnings, . . . the evidence gathered from his phone would have been inevitably discovered" and, therefore, was admissible at trial.

Petitioner was tried before a jury on March 26, 2019, and was convicted on the possession with intent to deliver heroin charge and acquitted on the charge of driving while in an impaired state. He was sentenced to a term of one to fifteen years in prison. This appeal followed.

At issue in this appeal is whether the circuit court erred in denying petitioner's motion to suppress the text messages that were found on his cell phone.

> When reviewing a ruling on a motion to suppress, an appellate court should construe all facts in the light most favorable to the State, as it was the prevailing party below. Because of the highly fact-specific nature of a motion to suppress, particular deference is given to the findings of the circuit court because it had the opportunity to observe the witnesses and to hear testimony on the issues. Therefore, the circuit court's factual findings are reviewed for clear error.

Syl. Pt.1, *State v. Lacy*, 196 W. Va. 104, 468 S.E.2d 719 (1996). "When we review the denial of a motion to suppress, we consider the evidence in the light most favorable to the prosecution."

---

[5] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

*State v. Lilly*, 194 W. Va. 595, 600, 461 S.E.2d 101, 106 (1995).

In his first and second assignments of error, petitioner argues that the circuit court erred in failing to conclude that the incriminating text messages were inadmissible based upon the failure of law enforcement to advise petitioner, while he was in custody, of his *Miranda* rights before requesting his consent to search his cell phone and, further, that petitioner's consent to the search was involuntary. Because we find that the State proved that the admission of the challenged evidence was harmless beyond a reasonable doubt, we need not address the merits of these arguments.

The alleged errors that petitioner assigns are constitutional in nature. Therefore, the burden of proof is on the State to show that the alleged error was harmless beyond a reasonable doubt. *See* Syl. Pt. 5, *State ex rel. Grob v. Blair*, 158 W. Va. 647, 214 S.E.2d 330 (1975) ("Failure to observe a constitutional right constitutes reversible error unless it can be shown that the error was harmless beyond a reasonable doubt"). "'Errors involving deprivation of constitutional rights will be regarded as harmless only if there is no reasonable possibility that the violation contributed to the conviction.'" *State v. Jenkins*, 195 W. Va. 620, 629, 466 S.E.2d 471, 480 (1995) (quoting Syl. Pt. 20, *State v. Thomas*, 157 W. Va. 640, 203 S. E.2d 445 (1974)). *See also State v. Omechinski*, 196 W. Va. 41, 48 n.11, 468 S.E.2d 173, 180 n.11 (1996) ("Most errors, including constitutional ones are subject to harmless error analysis . . . simply because it makes no sense to retry a case if the result assuredly will be the same.") (citing *Sullivan v. Louisiana*, 508 U.S. 275, 278 (1993)).

Having carefully reviewed the evidence presented at trial, we find that the State proved, beyond a reasonable doubt, that the circuit court's alleged error of admitting the incriminating text messages retrieved from petitioner's cellphone at trial did not contribute to petitioner's conviction of one count of possession with intent to deliver heroin. The undisputed evidence showed that Deputy Kilmer conducted surveillance of petitioner's residence based upon anonymous tips from callers who suspected that drugs (specifically, heroin and MDMA) were being sold out of it. During the course of the surveillance, Deputy Kilmer, an experienced drug interdiction officer, observed petitioner make short trips to and from the residence in his vehicle, which he testified was behavior consistent with drug trafficking. Deputy Kilmer also observed petitioner sitting in his vehicle for long periods while on his cellphone. Deputy Kilmer eventually made a valid stop and search of petitioner's vehicle, at which time another law enforcement officer found an MDMA pill that was packaged in a manner typically used by drug dealers. When asked if he had any drugs on his person, petitioner admitted to Deputy Kilmer that he had concealed heroin in his rectum. The concealed heroin was eventually produced and found to be individually packaged in three twist-off bags, with one bag weighing .5 grams and two bags weighing one gram each. Deputy Kilmer testified that the manner in which the heroin was packaged and the weight of the individual bags were consistent with those typically found in narcotics sales. These facts are undisputed. We find, therefore, that it is beyond cavil that the circuit court's alleged error (if any) of admitting the incriminating text messages from petitioner's cellphone into evidence at trial was harmless beyond a reasonable doubt.[6]

_____

[6] In a separate assignment of error, petitioner argues that the circuit court erred in concluding that, "even if [petitioner's] consent to search the phone was rendered involuntary by

4

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** July 30, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

**NOT PARTICIPATING:**

Justice Margaret L. Workman

---

virtue of his custodial status and lack of Miranda or Fourth Amendment rights warnings, . . . the [text messages] gathered from his phone would have been inevitably discovered[,]" and, therefore, were admissible at trial. Given our conclusion that the admission of the incriminating text messages constituted harmless error, we need not address this assignment of error.