**FILED**
**January 18, 2023**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 22-0099** (Calhoun County CC-07-2020-F-37)

**Danny Edward Lane,**
**Defendant Below, Petitioner**

**MEMORANDUM DECISION**

Petitioner Danny Edward Lane appeals the Circuit Court of Calhoun County's January 10, 2022, sentencing order.[1] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. Proc. 21.

On May 5, 2020, petitioner embarked on a series of events that culminated in his convictions for two counts of kidnapping, two counts of battery, two counts of malicious assault, two counts of assault during the commission of a felony, two counts of conspiracy to commit kidnapping, two counts of conspiracy to commit malicious assault, and two counts of conspiracy to commit assault during the commission of a felony.[2] In a truncated version of the events giving rise to these convictions, petitioner believed that the victims of these crimes, Brandon Tallhammer and Christopher Thornton, stole some of his belongings, so he picked them up from separate locations and drove them around town to retrieve those belongings.[3] At a point during the day, petitioner and the victims went to petitioner's home to drop off some of the collected belongings. There, petitioner's sons beat Mr. Thornton, including with a baseball bat, and his wife unchained the family's dog, which attacked Mr. Thornton at petitioner's direction. After the attack ceased, the victims voiced their intention to walk home, but petitioner assured them that he would drive them back to the locations from which he picked them up. Petitioner did not, however, return the

---

[1] Petitioner appears by counsel John J. Balenovich. The State of West Virginia appears by counsel Patrick Morrisey and Andrea Nease Proper.

[2] Most, if not all, of the others involved in these crimes resolved their criminal charges by plea agreement.

[3] It does not appear that when the victims initially joined petitioner, they did so against their will.

victims to those locations, instead transporting them to another man's garage that contained tools petitioner used as weapons against the victims. Inside the garage, petitioner twice extinguished a cigarette on Mr. Tallhammer's face, stating that he was leaving something by which Mr. Tallhammer could remember him, and he burned Mr. Tallhammer's hands with a torch. The torch was held on Mr. Tallhammer's hands long enough that they "sizzle[d] and pop[ped]," and Mr. Thornton could smell burning flesh. Petitioner held the torch longer on Mr. Tallhammer's right hand, after learning that that was his dominant hand. Eventually, petitioner allowed the victims to walk away. He instructed them not to turn around as they walked away, and Mr. Tallhammer heard what "sound[ed] like, [someone] jacked a shell into the chamber of a pistol." The victims walked to a nearby friend's house, whose mother alerted authorities two days later. Also two days later, Mr. Tallhammer sought medical treatment for his burns. After the jury convicted petitioner of the aforementioned crimes, the circuit court denied his motions for a new trial and post-verdict judgment of acquittal and sentenced him. Petitioner now appeals from the court's January 10, 2022, sentencing order.

> In our review of the circuit court's order denying petitioner a new trial,
>
> we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

Syl. Pt. 3, in part, *State v. Vance*, 207 W. Va. 640, 535 S.E.2d 484 (2000).

Petitioner first claims that the circuit court erred in denying his motion to strike two prospective jurors for cause[4] and in granting, over his objection, the State's motion to strike a prospective juror who knew Mr. Tallhammer, voiced an unfavorable opinion about Mr. Tallhammer's work ethic, and stated that "[p]eople get themselves in messes sometimes, and it's nobody's fault but their own."

Notably, petitioner removed by peremptory strikes the prospective jurors he argues should have been struck for cause. Thus, assuming (without deciding) that these challenged jurors were biased, petitioner can only succeed in obtaining a new trial for having used peremptory strikes to remove them if he has shown that he was prejudiced. Syl. Pt. 3, in part, *State v. Sutherland*, 231 W. Va. 410, 745 S.E.2d 448 (2013). In particular, reversible error occurs where "the resulting jury was not fair and impartial." *State v. Benny W.*, 242 W. Va. 618, 628, 837 S.E.2d 679, 689 (2019) (quoting *State v. Rollins*, 233 W. Va. 715, 729, 760 S.E.2d 529, 543 (2014)). Petitioner does not assert and has failed to show that the resulting jury was not fair and impartial. As a result, he has not demonstrated that he was prejudiced by the use of peremptory strikes to remove the prospective jurors. We likewise find no error in the court's granting of the State's motion to strike the prospective juror who held a negative opinion of Mr. Tallhammer. There, too, the "trial court has

---

[4] According to petitioner, one of the prospective jurors he moved to strike was sympathetic toward the victims. Petitioner's argument stems from the juror's hazy recollection of media coverage of the victims having been "tortured." The other prospective juror petitioner challenged was employed in the Calhoun County Clerk's Office.

broad discretion in determining whether to strike jurors for cause, and we will reverse only where actual prejudice is demonstrated." *Id.* Petitioner has not argued that he was prejudiced by the court's action with regard to this prospective juror, and we find no error in the court's decision to strike the juror for cause for being "predisposed to thinking [Mr. Tallhammer] got what he deserved." *See State v. Miller*, 197 W. Va. 588, 605, 476 S.E.2d 535, 552 (1996) (noting that a court is entitled to "rely upon its self-evaluation of allegedly biased jurors in determining actual juror bias").

Petitioner also assigns error in the circuit court's purported refusal to allow the emergency room physician who treated Mr. Tallhammer's burns to offer opinions regarding different types of burns and their lasting effects, a claim we review for an abuse of discretion. *State v. Black*, 227 W. Va. 297, 306-07, 708 S.E.2d 491, 500-01 (2010). Petitioner asserts that he was "attempting to elicit testimony concerning the severity and potential lasting effects or disfigurement of [Mr.] Tallhammer's burns," and that the court's ruling prevented him from defending against the multiple malicious assault charges. We must first clarify that petitioner was not prevented from eliciting testimony from this doctor regarding the severity of Mr. Tallhammer's burns. Rather, he was prevented from showing the doctor a printed image of burns[5] and eliciting opinions regarding the severity of those burns. As the State made clear below, it objected "not because the line of questioning was incorrect *per se*" but because, "for all the expert witness or the parties knew, that picture could have been a picture of a costume or make-up from a movie studio." An expert may offer opinion or other testimony where "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." W. Va. R. Evid. 702(a). Petitioner has not explained how opinions regarding the severity of unknown burns, if burns at all, caused by unknown sources on individuals with unknown medical histories would have assisted the trier of fact, so he has demonstrated no abuse of the court's discretion in prohibiting such testimony.

Next, petitioner claims error in the circuit court's denial of his motion for judgment of acquittal, asserting that there was insufficient evidence to support his kidnapping, malicious assault, and battery convictions. "The Court applies a de novo standard of review to the denial of a motion for judgment of acquittal based upon the sufficiency of the evidence." *State v. Juntilla*, 227 W. Va. 492, 497, 711 S.E.2d 562, 567 (2011) (citation omitted). Also, it is well established that petitioner faces a high bar in establishing an insufficiency of the evidence as the evidence is viewed in the light most favorable to the prosecution, and all inferences and credibility assessments must be credited in the State's favor. Syl. Pt. 3, in part, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995). Further, "a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." *Id.*

Regarding kidnapping, petitioner claims that the evidence showed that the victims willingly accompanied him to retrieve his belongings and willingly stayed in the garage. Under the relevant portions of the kidnapping statute, West Virginia Code § 61-2-14a(a) (2017),

---

[5] The image petitioner sought to show the doctor was not made part of the appendix record, but it is clear from the record that it did not depict Mr. Tallhammer's burns. The State characterized it below as "a picture printed from [G]oogle [I]mages."

[a]ny person who unlawfully takes custody of, conceals, confines or restrains another person against his or her will by means of force, threat of force, duress, fraud, deceit, inveiglement, misrepresentation or enticement with the intent:

. . .

(2) To transport another person with the intent to inflict bodily injury or to terrorize the victim or another person,

is guilty of kidnapping. The evidence showed that petitioner took custody of the victims against their will by deceiving them and/or misrepresenting that he would return them to their desired locations. Any ostensible voluntariness on their part was due only to petitioner's deceitful assurances regarding where he would take them, so it cannot be said that the record contains no evidence to support petitioner's kidnapping convictions.

Regarding malicious assault, petitioner argues that the evidence was insufficient because Mr. Tallhammer's hand injuries had "very little chance of permanent scarring." He claims further that there was no evidence of an injury to Mr. Thornton that rose to the required level. Malicious assault is committed "[i]f any person maliciously shoots, stabs, cuts or wounds any person, or by any means cause[s] him or her bodily injury with intent to maim, disfigure, disable or kill." W. Va. Code § 61-2-9(a). We note first that petitioner was not convicted of maliciously assaulting Mr. Thornton; he was convicted of battery as a lesser included offense of malicious assault. Petitioner's malicious assault convictions resulted from his use of a torch on Mr. Tallhammer's hands—a torch he steadied on Mr. Tallhammer's dominant hand—and his twice having extinguished a cigarette on Mr. Tallhammer's face in an effort to scar him. Accordingly, the evidence was sufficient for the jury to find that petitioner intended to maim, disable, or disfigure Mr. Tallhammer.

Petitioner's final challenge to the sufficiency of the evidence is predicated on his assertion that because the evidence showed that petitioner's son, not petitioner, hit Mr. Thornton with the baseball bat, there was no evidence of unlawful contact by petitioner to support his battery conviction. This argument ignores our holding that "a person may be convicted of a crime so long as the evidence demonstrates that he acted as an accessory before the fact, as a principal in the second degree, or as a principal in the first degree in the commission of such offense." Syl. Pt. 8, in part, *State v. Fortner*, 182 W. Va. 345, 387 S.E.2d 812 (1989). Petitioner, as "a person who [was] present, aiding and abetting the fact to be done," was a principal in the second degree. *Id.* at 349, 387 S.E.2d 816, Syl. Pt. 5, in part. Consequently, he was lawfully convicted of battering Mr. Thornton, and his motion for judgment of acquittal was properly denied.

In his remaining assignments of error, petitioner urges the Court to find plain error.[6] Petitioner did not move for a sequestration order or an instruction that witnesses not discuss their testimony with others, but he argues that the circuit court plainly erred in failing to give that

_____

[6] "To trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syl. Pt. 7, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995).

4

instruction and in not questioning the victims on the record after they were seen talking outside the courtroom after Mr. Tallhammer testified but prior to Mr. Thornton's testimony. We have previously determined that the failure to instruct witnesses not to discuss their testimony does not rise to the level of plain error. *State v. Omechinski*, 196 W. Va. 41, 47, 468 S.E.2d 173, 179 (1996) (concluding that the trial court's failure to instruct witnesses not to discuss the case amongst themselves, where such instruction was not requested, does not rise to the level of plain error). We further find no error, let alone plain error, resulted from the court not questioning the victims on the stand after they were seen speaking to one another. Petitioner has cited no law imposing any such requirement, so he has not shown any error that is plain. *See* Syl. Pt. 8, in part, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995) ("To be 'plain,' the error must be 'clear' or 'obvious.'").

Petitioner also claims that the court plainly erred in not ordering a change of venue due to pretrial publicity. A change of venue is warranted if there exists "a present hostile sentiment against [a defendant], arising from the adverse publicity, which extends throughout the county in which the offense was committed, and which precludes the accused from receiving a fair trial in that county." Syl. Pt. 3, in part, *State v. Williams*, 172 W. Va. 295, 305 S.E.2d 251 (1983). Petitioner has included no articles or other media coverage within the appendix record to establish adverse publicity, nor has he identified any evidence of a present hostile sentiment against him.[7] Rather, to support his claim, he points only to a *prospective* juror's faint recollection of having read that the victims were tortured. This does not suffice to establish a hostile sentiment extending throughout the county that precluded him from receiving a fair trial, and he has failed to establish plain error in the court's taking no action to address a nonexistent issue.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** January 18, 2023

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn

---

[7] To the contrary, the transcript of voir dire reveals that the jury panel was questioned thoroughly about its exposure to media coverage, and there was no pervasive hostile sentiment against petitioner.