IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2014 Term

_____

No. 12-1183

_____

FILED

**January 29, 2014**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA,
Plaintiff Below, Respondent

v.

ROY FRANKLIN HILLBERRY, II,
Defendant Below, Petitioner

_____

Consolidated Appeal from the Circuit Court of Marion County
The Honorable David R. Janes, Judge
Criminal Action Nos. 09-F-194 and 12-F-83

AFFIRMED
_____

Submitted: January 15, 2014
Filed: January 29, 2014

Kevin T. Tipton, Esq.                           Patrick Morrisey
Fairmont, West Virginia                         Attorney General
Counsel for the Petitioner                      Christopher Dodrill
                                                Assistant Attorney General
                                                Marland L. Turner, Esq.
                                                Assistant Attorney General
                                                Charleston, West Virginia
                                                Counsel for the Respondent

JUSTICE KETCHUM delivered the Opinion of the Court.

Syllabus by the Court

1. "Remarks made by the State's attorney in closing argument which make specific reference to the defendant's failure to testify, constitute reversible error and defendant is entitled to a new trial." Syllabus Point 5, *State v. Green*, 163 W.Va. 681, 260 S.E.2d 257 (1979).

2. "Under the Due Process Clause of the *West Virginia Constitution*, Article III, Section 10, and the presumption of innocence embodied therein, and Article III, Section 5, relating to the right against self-incrimination, it is reversible error for the prosecutor to cross-examine a defendant in regard to his pre-trial silence or to comment on the same to the jury." Syllabus Point 1, *State v. Boyd*, 160 W.Va. 234, 233 S.E.2d 710 (1977).

3. Under *W.Va. Code* § 61-11-19 [1943], a recidivist information is sufficient if it alleges a previous conviction with such particularity as to give reasonable notice to the defendant: (1) of the nature and character of the previous conviction; (2) of the court wherein the previous conviction occurred; and (3) that the identity of the person previously convicted is the same as the defendant.

4. "A pretrial identification by photograph will be set aside if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Syllabus Point 4, *State v. Harless*, 168 W.Va. 707, 285 S.E.2d 461 (1981).

5.      "Most courts have concluded that a photographic array will not be deemed excessively suggestive as long as it contains some photographs that are fairly representative of the defendant's physical features.  The fact that some of the photographs are dissimilar to the defendant's appearance will not taint the entire array."  Syllabus Point 6, *State v. Harless*, 168 W.Va. 707, 285 S.E.2d 461 (1981).

Justice Ketchum:

The defendant, Roy Franklin Hillberry, II, was convicted by a jury of the armed robbery of a gambling parlor. He appeals his conviction for robbery in the first degree and his sentence to imprisonment for life as a recidivist. Having considered the appendix record, the arguments and the briefs of the parties, the defendant's conviction and sentence are affirmed.

## I. Factual Background

On July 15, 2009, a man robbed the High Life Lounge in Fairmont, West Virginia, at gunpoint. The robber took more than $3,900.00 from the Lounge's safe. Video cameras captured images of the robber's face, clothing and shoes. Several days after the robbery the defendant was identified as the robber and a warrant was issued for his arrest.

Subsequently, the defendant surrendered at the Fairmont Police Department. A police sergeant took the defendant to an interview room and read the defendant his *Miranda* rights. The defendant initialed a written form acknowledging those rights, signed a form waiving those rights, and agreed to be interviewed by the police.

During the interview, the defendant denied involvement in the robbery and claimed that he was in Morgantown, West Virginia, at the time of the robbery. When confronted with images taken from the video cameras, the defendant maintained that it was not him. Later in the interview the defendant announced that he did not want to answer any

1

further questions and requested a lawyer. The officers stopped interviewing the defendant and presented him to a magistrate for his initial appearance.

The defendant was indicted for robbery in the first degree and his case proceeded to a trial by jury. The jury was presented with evidence that included videotapes of the robbery from the gambling parlor. An investigating officer introduced into evidence a t-shirt obtained from the defendant's former roommate. This t-shirt had the same design on it as the one worn by the robber in the video. The former roommate testified that it was the defendant in the video, and that she identified the defendant as the robber by his shirt, shoes, and the scar on his lip. A co-worker of the defendant testified that on one occasion he was riding in the defendant's car and, when driving past the High Life Lounge, the defendant told him that he had robbed the establishment and that "he was caught on camera." The defendant also told him that "at the time [of the robbery] he was bald headed" and he was therefore "trying to grow his hair out so he could look different." The defendant did not testify on his own behalf, and the defense did not present any evidence following the close of the State's case-in-chief.

On April 12, 2012, the jury returned a verdict finding the defendant guilty of robbery in the first degree. The sentence for that conviction would normally be set by the circuit court for a term of "not less than ten years."[1] However, prior to sentencing, the State

---

[1] *W.Va. Code* § 61-2-12(a)(2) [2000] states, in pertinent part:
    (a) Any person who commits or attempts to commit robbery . .

(continued...)

2

filed a recidivist information, pursuant to *W.Va. Code* §§ 61-11-18(c)[2] and -19[3], which

sought to increase the defendant's sentence to life imprisonment because he had three prior

felony convictions.[4]

A jury trial was held on the information to determine whether the defendant

was the same as the person in the three prior felony convictions. The jury found that the

defendant was the same person. Based on that finding, the trial court enhanced the

---

[1](...continued)
.

> (2) [and] uses the threat of deadly force by the presenting of a firearm . . . is guilty of robbery in the first degree and, upon conviction thereof, shall be imprisoned in a state correctional facility not less than ten years.

[2] *W.Va. Code* § 61-11-18(c) [2000] states:
> When it is determined . . . that such person shall have been twice before convicted in the United States of a crime punishable by confinement in a penitentiary, the person shall be sentenced to be confined in the state correctional facility for life.

[3] *W.Va. Code* § 61-11-19 [1943] establishes the procedure for adjudicating whether a convicted defendant should be sentenced as a recidivist under *W.Va. Code* § 61-11-18. *See infra*.

[4] The information stated the defendant had previously been convicted of the following felony offenses: (1) April 28, 2010, Robbery in the Second Degree (Circuit Court of Monongalia County, West Virginia); (2) May 25, 2004, Bank Robbery (United States District Court for the Southern District of Ohio); and (3) March 25, 1997, Robbery in the Second Degree (Circuit Court of Jefferson County, Kentucky).

defendant's robbery conviction sentence pursuant to the recidivist statute, and sentenced the defendant to life imprisonment.[5] The defendant now appeals.

## II. Standard of Review

The defendant asserts various assignments of error that are subject to different standards of review that we set forth in our discussion, *infra*. In addition to those standards, we also note that:

> In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

Syllabus Point 3, *State v. Vance*, 207 W.Va. 640, 535 S.E.2d 484 (2000).

## III. Discussion

The defendant asserts four assignments of error: (1) that reversible error occurred when the prosecutor made oblique references to the defendant's failure to present any evidence in his case-in-chief, including a reference to the defendant's failure to testify; (2) that the trial court erred by permitting the State to elicit testimony that referenced the

---

[5] The trial court ordered the life sentence to run consecutive to a 5-18 year sentence that the defendant was serving for another robbery conviction in 2010.

defendant having exercised his right to counsel and right to remain silent during a police interrogation; (3) that the recidivist information filed by the State was fatally flawed; and (4) that the trial court erred when it refused to suppress testimony referencing the pretrial identification of the defendant from a photo line-up and when it later permitted an in-court identification of the defendant.

1. *Reference to the defendant not testifying*
*or presenting evidence through a case-in-chief.*

Defense counsel filed a motion *in limine* asking the circuit court to bar the State from making any reference to the defendant's failure to call witnesses or to present a case-in-chief. The circuit court granted the motion, and ordered that "the state cannot comment on the defendant's failure to testify or present evidence. That's a clear instruction."

The prosecutor told the jury in his closing argument in the robbery trial that the case was "all one-sided," and commented on the weight of the evidence by observing "[t]hat's all that was presented by the defense at any point in time" and "[d]id anybody under oath testify to that? Not a one." In the recidivist trial, the prosecutor argued on three occasions that the State's evidence was "uncontested."

The defendant contends that the three comments made by the prosecutor during closing argument in his robbery trial violated the circuit court's *in limine* order. The defendant also contends that, in his recidivist trial, the prosecutor's comments referenced his decision not to testify or present any evidence.

5

The State responds that the prosecutor's comments during the robbery trial must be construed in the context of the defense lawyer's claims during opening statements. The State asserts that the prosecutor "simply intended to highlight the inconsistencies between defense counsel's opening statement and the evidence that was actually extracted from the witnesses at trial." The State claims that the "prosecutor intended to demonstrate how the trial failed to produce the evidence that the defense counsel promised during opening remarks."

> During opening remarks, defense counsel stated:
>
> And you heard [the State] indicate that [the defendant] had financial problems. That he had a gambling problem. He worked at a coal mine, and you're going to hear, making about 20 bucks an hour. Pretty good money.
>
> You're going to see the car in these pictures that he told you about. You're going to see the car that he was driving. That he was paying for. A practically new, blue Chevy full-size Tahoe. But he had financial problems. The evidence will show that he left for work that morning [of the robbery]. He received a voicemail from his boss saying that work was cancelled due to a fan being down.

The State contends that its challenged closing argument merely addressed the defense lawyer's assertions made during opening statement. To rebut these assertions, the prosecutor argued:

> First of all, in his opening, [defense counsel] said, "Hey, I'm going to show you without a doubt he was somewhere else." No, didn't happen. The CAD report. A document prepared by the dispatcher about the radio traffic. What's that mean? It matches the times. It's a distraction. It's a wild goose. Don't

6

chase it. The defendant makes all this money. Twenty dollars an hour was mentioned several times. He works at a coal mine. Any relevance to that? Any testimony to that? Anybody under oath ever say that he made $20 an hour? No. Anybody ever say, any testimony under oath, how many hours he worked? We know he wasn't going to work when he was supposed to. When the police were looking for him to serve the warrant, he wasn't at work. [His] boss thought he was underground, but he wasn't there. We know for a fact he didn't go to work on July 15 now. A lot of references to this fan being down. Did anybody under oath testify to that? Not a one.

*W.Va. Code* § 57-3-6 [1923] expressly provides that a criminal defendant's decision to invoke his right not to testify "shall create no presumption against him, nor be the subject of any comment before the court or jury by anyone." In Syllabus Point 5 of *State v. Green*, 163 W.Va. 681, 260 S.E.2d 257 (1979), we held that "[r]emarks made by the State's attorney in closing argument which make specific reference to the defendant's failure to testify, constitute reversible error and defendant is entitled to a new trial."

In *State v. Clark*, 170 W.Va. 224, 227, 292 S.E.2d 643, 646 (1982), we noted that:

> The general rule formulated for ascertaining whether a prosecutor's comment is an impermissible reference, direct or oblique, to the silence of the accused is whether the language used was manifestly intended to be, or was of such character that the jury would naturally and necessarily take it to be a reminder that the defendant did not testify.

However, we further explained in *Clark* that

> the prosecution is free to stress the strength of the government's case and to argue the evidence and reasonable inferences therefrom, and the prosecutor is not constitutionally forbidden

7

from telling the jury the fact that the evidence on any given point in the case stands uncontradicted. A prosecutor's statement that the evidence is uncontradicted does not "naturally and necessarily" mean the jury will take it as a comment on the defendant's failure to testify. In many instances someone other than the defendant could have contradicted the government's evidence.

170 W.Va. at 227, 292 S.E.2d at 647.

In the opening statement portion of the robbery trial, defense counsel told the jury that the defendant made good money, that he had a good job, and that he left for work on the morning of the robbery. The State, in its closing argument, simply rebutted that assertion by reminding the jury there was no evidence establishing any of those points, and that the defense was trying to distract the jury from the real evidence. The State was entitled to remind the jury of defense counsel's statements made during opening remarks.

In the recidivist trial, the prosecutor argued that he had presented "overwhelming evidence which was uncontested," and that the evidence was "not only beyond a reasonable doubt, but beyond any doubt. The evidence has been uncontested."

We reiterate that, as we said in *State v. Clark*, *supra*, a prosecutor is "not constitutionally forbidden from telling the jury the fact that the evidence on any given point in the case stands uncontradicted." *Id*. A prosecutor's statement that the evidence presented on behalf of the State was uncontested does not automatically mean the jury will impute that the prosecutor is attaching a negative connotation to the defendant's failure to testify. It may

8

instead only mean that the defense has failed to offer any evidence, directly or through cross examination, that impeaches or challenges the State's evidence.

In this recidivist case, the evidence was overwhelming that the defendant was the person convicted of the felonies listed in the recidivist information. The references by the prosecutor that the evidence was beyond any doubt and uncontradicted did not affect the fairness of the trial. The prosecutor's oblique references were not, on this record, a reminder to the jury that the defendant did not testify. Further, even if we were to find error in the prosecutor's statements, it was plainly harmless in light of the overwhelming evidence.

In summary, we find no merit in these assignments of error by the defendant.

2. *Reference to the defendant's exercise of his right to counsel and right to remain silent during a police interrogation.*

In a pretrial motion *in limine*, defense counsel sought to bar any reference to the fact that the defendant terminated his police interview and requested the assistance of counsel. Defense counsel argued that any testimony that the defendant had "lawyered up" would imply something improper to the jury. The State argued that it should be able to introduce the fact that the defendant had exercised his rights "to explain why certain conduct of the police was terminated." The trial court denied the motion *in limine*.

The defendant contends that a single reference during trial that he terminated the police interview is reversible error. During direct examination the State had the following colloquy with one of the investigating officers:

9

**The State:** Did you participate at any point in time in the questioning of [the defendant] after he was Mirandized and gave a statement?

**Corporal Dalton:** I walked into the interview after Sergeant Pigott had been speaking with him for quite some time already. I kind of interrupted the interview and walked in on it.

**The State:** Was [the defendant] attired and wearing the same style of clothing as in the videos? Or as he was dressed today?

**Corporal Dalton:** I don't recall as far as his trousers and shirt what type he had on. But I noted that he did not have the Nike Air Jordan tennis shoes on that you see in the video or that I took the photographs of.

**The State:** Did he provide you any explanation of what happened to those shoes?

**Corporal Dalton:** When I asked him what happened to those shoes, he advised me that he did not wish to speak with me any further and that he would like to have a lawyer.

**The State**: And did that end your participation in asking him any questions?

**Corporal Dalton:** Yes, it did.

In Syllabus Point 1 of *State v. Boyd*, 160 W.Va. 234, 233 S.E.2d 710 (1977),

we held that:

> Under the Due Process Clause of the *West Virginia Constitution*, Article III, Section 10, and the presumption of innocence embodied therein, and Article III, Section 5, relating to the right against self-incrimination, it is reversible error for the prosecutor to cross-examine a defendant in regard to his pre-trial silence or to comment on the same to the jury.

We further explained in *Boyd* that:

> The basis for the rule prohibiting the use of the defendant's silence against him is that it runs counter to the presumption of innocence that follows the defendant throughout the trial. It is this presumption of innocence which blocks any attempt of the State to infer from the silence of the defendant that such silence is motivated by guilt rather than the innocence which the law presumes.

*Id.*, 160 W.Va. at 240, 233 S.E.2d at 716.

Corporal Dalton made a brief, unresponsive answer to the prosecutor's question about the defendant's shoes. We have held that an unresponsive brief reference by a witness about a defendant's pretrial silence is not prejudicial error when the silence was not made an issue or dwelled upon by the prosecution. In *State v. Marple*, 197 W.Va. 47, 475 S.E.2d 47 (1996), the Court found that even if the brief reference to a defendant's pretrial silence was plain error, it was not necessarily reversible error. The Court found that the brief reference in *Marple* was never made an issue or dwelled upon by the prosecution, and concluded by noting "we should only reverse a criminal conviction" when we find that the "error seriously affected the fairness, integrity, and public reputation of judicial proceedings." *Id.*, 197 W.Va. at 54, 475 S.E.2d at 54. In *State v. Hamilton*, 177 W.Va. 611, 355 S.E.2d 400 (1987), we found no reversible error where the reference to a defendant's pretrial silence was an isolated comment and the prejudicial effect was minimal.

We do not find that Corporal Dalton's brief reference to the defendant's terminating his police interview affected the fairness of his trial. It does not amount to reversible error. The prosecutor did not make it an issue or bring up the subject again.

11

3. *The recidivist information.*

The defendant contends that the criminal information filed by the State in his recidivist trial was "fatally flawed" because (1) it failed to "include the case numbers for the defendant's prior convictions," (2) it failed to "indicate what the defendant's sentence was for each of those prior convictions," and (3) there were no records attached evidencing the defendant's prior convictions. In response the State contends that the recidivist information was properly filed and met all the statutory requirements.

*West Virginia Code* § 61-11-19 [1943] provides, in pertinent part, that

> [i]t shall be the duty of the prosecuting attorney when he has knowledge of former sentence or sentences to the penitentiary of any person convicted of an offense punishable by confinement in the penitentiary to give information thereof to the court immediately upon conviction and before sentence. Said court shall, before expiration of the term at which such person was convicted, cause such person or prisoner to be brought before it, and upon an information filed by the prosecuting attorney, setting forth the records of conviction and sentence, or convictions and sentences, as the case may be, and alleging the identity of the prisoner with the person named in each, shall require the prisoner to say whether he is the same person or not.

In *State v. Masters*, 179 W.Va. 752, 373 S.E.2d 173 (1988), we discussed the elements that must be contained in an information alleging a prior conviction for the purpose of increasing a defendant's conviction. We stated in Syllabus Point 3 that:

> "An [information] alleging a prior conviction for the purpose of augmenting the sentence to be imposed [filed pursuant to W.Va. Code, 61–11–19], is sufficient, as to such prior conviction, if it avers the former conviction with such particularity as to reasonably indicate the nature and character of the former

12

offense, the court wherein the conviction was had and identifies the person so convicted as the person subsequently [convicted]." Syllabus Point 3, as amended, *State v. Loy,* 146 W.Va. 308, 119 S.E.2d 826 (1961).

We believe that this statement of the law in *Masters*, while correct, is cumbersome and should be restated. We therefore hold that under *W.Va. Code* § 61-11-19 [1943], a recidivist information is sufficient if it alleges a previous conviction with such particularity as to give reasonable notice to the defendant: (1) of the nature and character of the previous conviction; (2) of the court wherein the previous conviction occurred; and (3) that the identity of the person previously convicted is the same as the defendant.

The defendant in *Masters* argued that the prosecutor's erroneous listing of a docket number for one of the prior felony offenses rendered the information filed against him fatally defective. We rejected the argument and observed that:

> The purpose of the statutory requirement of a written allegation concerning the previous conviction or convictions is to give the defendant reasonable notice so he can intelligently determine how to respond and prepare a defense to the recidivist charge. The two key elements in a recidivist proceeding are proof of the prior felony conviction, and proof that the defendant is the person who was convicted of that felony.

*Id*., 179 W.Va. at 755, 373 S.E.2d at 176. We concluded in *Masters* that "[t]he erroneous criminal docket number did not adversely affect any substantial right of the defendant and must be disregarded as harmless error[.]" 179 W.Va. at 756, 373 S.E.2d at 177.

After reviewing the recidivist information filed by the prosecutor in the instant case, it is clear that the defendant had adequate notice of his three prior convictions and could

13

"intelligently determine how to respond and prepare a defense to the recidivist charge." *Id*. The information listed the previous criminal convictions with particularity, because it identified the nature and character of the previous offenses, identified the courts where the previous convictions occurred, and it identified the defendant as the same person previously convicted of those offenses.

The information filed against the defendant met the requirements of *W.Va. Code* § 61-11-19. Accordingly, we find no reversible error for this assignment of error.

4. *The photo line-up and in-court identification of the defendant*.

The defendant's final assignment of error is that the trial court erred by allowing the State to introduce a pre-trial photo line-up as an exhibit, and erred by permitting a witness to make an in-court identification of the defendant.

In Syllabus Point 4 of *State v. Harless*, 168 W.Va. 707, 285 S.E.2d 461 (1981), we held that "[a] pretrial identification by photograph will be set aside if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." We further held in Syllabus Point 6 of *Harless* that:

> Most courts have concluded that a photographic array will not be deemed excessively suggestive as long as it contains some photographs that are fairly representative of the defendant's physical features. The fact that some of the photographs are dissimilar to the defendant's appearance will not taint the entire array.

14

We have reviewed the photo line-up[6] and do not find that it was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Further, we believe the photographs are "fairly representative of the defendant's physical features." In terms of suggestiveness, one of the photographs in the array is actually a "mugshot" of a person bearing striking similarities to the defendant. This "mugshot" even has the booking information plate underneath the person's neck. In contrast, the defendant's photograph is of him looking casual, wearing a t-shirt, smiling and without suggestion of a custodial environment. To the extent that any of the photographs had a suggestive tendency, it would be the "mugshot" photograph. However, as the record and trial testimony clearly establish, the witness identified the defendant's photograph as the person who robbed her. We do not find the photo array to be unduly suggestive.

The defendant also contends that a witness's in-court identification should not have been permitted because the prosecutor asked leading questions telling the identifying witness where the defendant was sitting in the courtroom. In asking whether she could

---

[6]The photo line-up was not originally included in the appendix record. Rules 6 and 7 of the *Rules of Appellate Procedure* [2010] require the parties on appeal to include accurate reproductions of exhibits relevant to the issues raised on appeal, something both the defendant and the State failed to do. So, in order to properly consider this issue, and considering that it is a criminal case involving a defendant's liberty, we exercised our discretion and directed the Clerk to obtain the photo line-up (State's Exhibit 3) from the circuit clerk and make it part of the appendix record in this appeal. *See* Rule 6(b) ("The Court, on its own motion, may consider portions of the record other than those provided by the parties.") Counsel are advised that when a particular exhibit is in issue on appeal, it must be included in the appendix and made part of the record for appeal.

identify the defendant, the prosecutor told the witness that the defendant was to her right. The defendant properly objected, and the trial court properly sustained that objection as to the form of the question, but permitted the in-court identification. In its summary response, the State concedes that the question was leading and that the prosecutor should have phrased the question differently; however, the State contends that it was harmless error. We agree.

The weight to be given to eyewitness testimony is for the jury to determine. We have indicated that "[t]he veracity of [a witness's] in-court identification of the defendant [is] clearly a question properly submitted to the jury." *State v. Gravely*, 1771 W.Va. 428, 436, 299 S.E.2d 375, 383 (1982). "We are content to rely upon the good sense and judgment of American juries, for evidence with some element of untrustworthiness is customary grist for the jury mill. Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature." *State v. Boykins*, 173 W.Va. 761, 767, 320 S.E.2d 134, 139 (1984) (*quoting Manson v. Brathwaite*, 432 U.S. 98, 116 (1977)).

It should be obvious that prosecutors should not phrase a question in such a manner as would give any indication where the defendant is seated when seeking an in-court identification from a witness. However, in the appeal before us, evidence of the defendant's identity as the person who robbed the High Life Lounge was overwhelming, and we therefore find this error to be harmless.

16

## IV.  Conclusion

We find no reversible error.  The defendant's conviction and sentence are affirmed.

Affirmed.